UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT D. GURR, JR.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C17-744-RBL-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Robert D. Gurr Jr. appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I.  FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-six year old man with two years of college. Administrative Record ("AR") at 50.[1] His past work experience includes employment as an Information Technology ("IT") consultant for several companies, a systems

---

[1] Plaintiff testified that he obtained an Associate's Degree in Technical Sales from Weber State University. AR at 50.

REPORT AND RECOMMENDATION - 1

engineer, and a systems analyst. AR at 55-56, 72.[2] Plaintiff was last gainfully employed in 2011. AR at 62.

On November 7, 2013, plaintiff filed an application for DIB, alleging an onset date of October 1, 2011. AR at 159. Plaintiff asserts that he is disabled due to fibromyalgia, muscle pain, fatigue, insomnia, mood swings, anger, depression, mental fogginess, light-headedness, impaired concentration and memory, avoiding socialization, anxiety, and stress. AR at 63-65, 67-68, 171. His date last insured is March 31, 2014. AR at 49.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 108, 114. Plaintiff requested a hearing, which took place on April 30, 2015. AR at 38-80. On December 1, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 32-33. Plaintiff's request for review was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 15, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

---

[2] During the administrative hearing, the vocational expert testified that all of plaintiff's past work is sedentary and skilled (SVP 7). AR at 73.

REPORT AND RECOMMENDATION - 2

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

IV.   EVALUATING DISABILITY

As the claimant, Mr. Gurr bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

REPORT AND RECOMMENDATION - 3

expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.   DECISION BELOW

On December 1, 2015, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2014.

2. The claimant did not engaged in substantial gainful activity during the period from his alleged onset date of October 1, 2011, through the date last insured of March 31, 2014.

3. Through the date last insured, the claimant had the following severe impairments: cognitive disorder vs. neurodevelopmental disorder, dysthymic disorder vs. depressive disorder, and somatic disorder.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant could occasionally balance, stoop, kneel, and crouch. He could never climb ladders, ropes, or scaffolds. He could never climb ramps and stairs. He could never crawl. He should avoid concentrated exposure to hazards and heights. The claimant could

REPORT AND RECOMMENDATION - 5

perform simple, routine tasks and follow short, simple instructions. He could do work that needs little or no judgment and could perform simple duties that could be learned on the job in a short period. He required a work environment that is predictable and with few work setting changes. He also required a work environment with minimal supervisor contact. (Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges, and it does not preclude being in proximity to the supervisor.) The claimant could work in proximity to co-workers but not in a cooperative or team effort. He required a work environment that has no more than superficial interactions with co-workers. He required a work environment without public contact.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1968 and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured.[4]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2011, the alleged onset date, through March 31, 2014, the date last insured.

AR at 23-33.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err at step two by failing to find that plaintiff's post-traumatic stress disorder (PTSD) was a severe impairment?

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

      2.      Did the ALJ err in evaluating the medical opinion of the consultative examiner who diagnosed PTSD?

Dkt. 11 at 1-2; Dkt. 12 at 1.

## VII.    DISCUSSION

A.    <u>The ALJ Erred at Step Two and in Evaluating the Opinions of Dr. Collingwood and Dr. Moore</u>

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

At step two, the ALJ in this case found that plaintiff's severe impairments included "cognitive disorder vs. neurodevelopmental disorder," "dysthymic disorder vs. depressive

disorder," and somatic disorder. AR at 23.[5] The ALJ also found that "while the medical record does contain a diagnosis of post-traumatic stress disorder [citing AR at 307-16], these records do not contain sufficient details to support the diagnostic criteria for post-traumatic stress disorder. . . While the clamant may experience bad memories or occasional nightmares, the evidence does not show that the traumatic event is persistently re-experienced or that there is persistent avoidance of stimuli associated with the trauma along with numbing of general responsiveness. Neither does the evidence show persistent symptoms of increasing arousal, or disturbance causing clinically significant distress or impairment in social, occupational, or other important areas of functioning." AR at 25.[6] The ALJ further found that plaintiff "has not consistently reported post-traumatic stress disorder symptoms and has not received significant treatment for the condition." AR at 26 (citing AR at 248-99). "The diagnosis has not appeared consistently in the record. Therefore, I conclude that the record considered as a whole does not support post-traumatic stress disorder as a medically determinable impairment." AR at 26. The ALJ asserted, however, that he "considered all mental health symptoms regardless of the diagnosis" in assessing plaintiff's RFC. AR at 26.

### 1.    Dr. Collingwood

Plaintiff contends that the ALJ erred at step two because the SSA's own medical consultant Cynthia Collingwood, Ph.D., whose opinion the ALJ stated that he relied upon, identified an anxiety disorder as one of plaintiff's "severe" medically determinable

---

[5] The ALJ also found that plaintiff "has not established a medically determinable impairment of fibromyalgia," and that symptoms such as "joint and muscle pain with fatigue," without more, are not enough to establish a medically determinable impairment. AR at 24. However, plaintiff does not challenge the ALJ's finding that plaintiff's fibromyalgia was not medically determinable in this case.

[6] In a footnote, the ALJ noted that "the fifth revision (DSM-5) was released in May 2013 and includes changes to the diagnostic criteria for PTSD," and "the full diagnostic criteria for PTSD must be met." AR at 25, fn.4. The ALJ noted that "[o]verall, the symptoms of PTSD are mostly the same in DSM-5 as compared with DSM-IV." AR at 25, fn. 4.

REPORT AND RECOMMENDATION - 8

impairments. AR at 98-99. However, the ALJ did not include an anxiety disorder as a severe impairment at step two. AR at 23. Plaintiff asserts that "this category of disorder would include a diagnosis of PTSD [as diagnosed by Dr. Moore], and yet the ALJ concluded that plaintiff had no severe medically determinable anxiety disorder" and also failed to explain why his RFC findings differed from Dr. Collingwood's opinion. AR at 30. In addition to disregarding Dr. Collingwood's anxiety disorder diagnosis, plaintiff contends that the ALJ erred at step two by rejecting the opinion of Dr. Moore, a clinical psychologist designated by the SSA to perform a consultative examination.

The Court finds that the ALJ erred at step two by failing to address Dr. Collingwood's finding of a severe anxiety disorder, AR at 98, or include any limitations specifically related to a severe anxiety disorder in the RFC. Indeed, the ALJ did not address this aspect of Dr. Collingwood's opinion at all, although he did not include an anxiety disorder in his RFC assessment and asserted that he had adopted Dr. Collingwood's opinion. AR at 30.

Without more, the ALJ's broad assertion that he has "considered all mental health symptoms regarding of the diagnosis" is not sufficient to assure the Court that plaintiff's mental health symptoms stemming from his anxiety have been properly accounted for in the RFC in this case. Accordingly, this case must be remanded for the ALJ to reevaluate plaintiff's severe mental impairments at step two, including any and all diagnoses related to an anxiety disorder or PTSD.

        2.     *Dr. Moore*

Because plaintiff's assignment of error at step two regarding the ALJ's rejection of Dr. Moore's diagnosis of PTSD overlaps significantly with the plaintiff's final assignment of error (alleging that the ALJ rejected Dr. Moore's medical opinion without providing legally sufficient reasons), the Court will address both issues together. As discussed below, the Court

REPORT AND RECOMMENDATION - 9

finds that the ALJ erred by rejecting Dr. Moore's diagnosis of PTSD in this case, and by failing to include PTSD as a severe medically determinable impairment at step two.

After conducting a thorough psychological consultative examination that included a medical records review, clinical interview, and extensive psychometric testing, AR at 307-16, Dr. Moore diagnosed plaintiff with PTSD "with delayed expression" and "without disassociation." AR at 315. Along with this diagnosis, Dr. Moore noted an encounter for perpetrator of child abuse (with a current report to Child Protective Services), high expressed emotion in family of origin, and past history of physical and sexual abuse in childhood. AR at 315. He further diagnosed plaintiff with a persistent depressive disorder (with early onset, anxious distress and personal history of self-harm) and a somatic symptoms disorder (with predominant mild to moderate pain). AR at 307, 315. Finally, he identified an "other specified neurodevelopmental disorder, with cross-diagnosis symptoms of auditory memory problems" based upon plaintiff's performance during testing. AR at 315.[7]

Dr. Moore found that "Mr. Gurr has a childhood history of complex trauma that currently impacts his life. Robert minimalizes the long term effects of his physical and sexual abuse but is able to acknowledge some long-term adverse effects such as his tendency to model his father's abusive behavior." AR at 314. Dr. Moore further found that "in a review of his previous health care needs and intervention, and expanded in this diagnostic process, it is clear that Robert Gurr had multiple traumatic events in childhood which, to this day, he minimizes. However, he does acknowledge a persistent depression coming out of a home with a need for constant hypervigilance due to ongoing domestic violence and unknown level of sexual abuse

---

[7] Dr. Moore's Axis III diagnoses included fibromyalgia, asthma, and persistent insomnia. AR at 315.

REPORT AND RECOMMENDATION - 10

threat." AR at 316. Dr. Moore concluded that "nightmares and persistent insomnia have emerged during his adult life, which is a consistent anxiety presentation in PTSD." AR at 316.

Plaintiff contends that the ALJ erred by "erroneously substituting his opinion for that of the trained examiner [Dr. Moore] and the medical consultants [including Dr. Collingwood]" because there is no opinion in the record from a medically acceptable source consistent with the ALJ's conclusion that no PTSD or Anxiety Related Disorder was present. Dkt. 11 at 4. In addition, plaintiff argues that the ALJ's error was harmful because an anxiety disorder, such as PTSD, is distinct from the impairments that the ALJ found to be severe, and would present varying and distinct limitations with respect to an individual's ability to perform full-time work activities. As a result, plaintiff asserts that the ALJ did not adequately consider the limitations flowing from his anxiety-related impairment, such as plaintiff's limited ability to appropriately interact with others, in concluding that plaintiff was capable of full-time work at step five. *Id.* at 6.

The Commissioner responds that the ALJ reasonably found that plaintiff did not have severe PTSD, because while the medical record does contain a diagnosis of PTSD and plaintiff may experience bad memories or occasional nightmares, the records do not contain sufficient details to support the diagnostic criteria. Dkt. 12 at 5 (citing AR at 315). In addition, plaintiff did not list PTSD as a disabling impairment when applying for disability benefits, and the diagnosis has not appeared consistently in the record. Dkt. 12 at 5. Thus, the Commissioner contends that the ALJ reasonably concluded that the record as a whole does not support PTSD as a medically determinable impairment. *Id.*

The Court finds that the ALJ committed harmful error by failing to find plaintiff's PTSD to be a severe medically determinable impairment at step two, which is a *de minimis* screening device to dispose of groundless claims. AR at 25-26. As discussed below, the ALJ

REPORT AND RECOMMENDATION - 11

further erred by rejecting Dr. Moore's opinion without providing specific and legitimate reasons, supported by substantial evidence. AR at 31.

At step two, the ALJ in this case substituted his own interpretation of the DSM's diagnostic criteria for the opinion of Dr. Moore, who conducted an extensive consultative evaluation with a detailed review of plaintiff's medical records, a clinical interview, and psychometric testing. In diagnosing plaintiff with PTSD, Dr. Moore thoroughly explained that plaintiff did not appear to have a good understanding of his symptoms of PTSD or their impact on his current functioning. AR at 314-316. Specifically, Dr. Moore found that plaintiff consistently minimized his PTSD symptoms resulting from his "childhood history of complex trauma that currently impacts his life." AR at 314. Dr. Moore observed that although there are significant "long term adverse effects such as his tendency to model his father's abusive behavior," AR at 314, plaintiff nevertheless "minimizes the long term effects of his physical and sexual abuse." AR at 314. In light of plaintiff's minimization of his PTSD symptoms, it is understandable that plaintiff would have failed to seek treatment for his condition or report it to various providers. However, the ALJ either ignores, or dismisses out of hand, Dr. Moore's explanation as to why plaintiff did not report his symptoms of PTSD more frequently, and why plaintiff failed to seek treatment for his PTSD symptoms. The ALJ instead concludes that because plaintiff "has not consistently reported post-traumatic stress disorder symptoms and has not received significant treatment for the condition," and because "the diagnosis has not appeared consistently in the record," Dr. Moore's diagnosis of PTSD should be rejected. AR at 26. As the ALJ does not acknowledge or discuss Dr. Moore's explanation regarding plaintiff's minimization of his symptoms throughout his life, the ALJ's reasons for rejecting Dr. Moore's diagnosis of PTSD at step two are not sound.

In addition, the Court finds that the ALJ erred at step two by finding that PTSD was not a medically determinable impairment because "the evidence does not show that the traumatic event is persistently re-experienced or that there is persistent avoidance of stimuli associated with the trauma along with numbing of general responsiveness. Neither does the evidence show persistent symptoms of increasing arousal, or disturbance causing clinically significant distress or impairment in social, occupational, or other important areas of functioning." AR at 25. It is not the role of the ALJ to make independent medical findings, and to diagnose claimants with mental health conditions. *See, e.g., Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("…ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). As plaintiff points out, the ALJ did not credit another medical provider's opinion, but simply applied the diagnostic criteria himself and overruled Dr. Moore's diagnosis.

Finally, the Court finds that the ALJ's other reasons for rejecting Dr. Moore's opinion as a whole are not specific, legitimate, or supported by substantial evidence in the record. The ALJ rejected Dr. Moore's opinion that plaintiff was "not capable of maintaining gainful employment until he stabilizes his behavioral health problems with an integrated bio-psychosocial services plan," AR at 316, on the grounds that Dr. Moore's opinion was "inconsistent with the longitudinal treatment record and the claimant's independent daily activities," such as attempting to start his own business, playing computer games, working for eight hours a day on his book for a period of time, and collecting unemployment from the State of Washington. AR at 31. The ALJ asserts that "all of these activities require some amount of concentration, persistence, and pace." AR at 31.

Without more, the ALJ's conclusory assertion that Dr. Moore's opinion was "inconsistent with the longitudinal record" does not meet the level of specificity required for

the ALJ to reject an examining physician's opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"). Similarly, the ALJ failed to explain precisely how the daily activities identified by the ALJ were inconsistent with Dr. Moore's opinion. For example, the counseling notes discussed by Dr. Moore demonstrated repeated failed efforts by plaintiff to become employed or generate income on his own. AR at 308. The record also reveals no earnings after the alleged onset date relating to plaintiff's business plan or book. Thus, the fact that plaintiff may have mistakenly believed, at that time, that he was still physically capable of working, and made such a representation to the State by collecting unemployment benefits, is not necessarily inconsistent with Dr. Moore's opinion that he was no longer mentally capable of sustaining full-time work.[8] On the contrary, this behavior appears consistent with Dr. Moore's finding that plaintiff tended to minimize the effects of some of his mental health symptoms. AR at 314. Dr. Moore found, based upon the results of the psychological testing, that plaintiff "appears to be impacted in his ability to concentrate and focus which is at a disability level of learning." AR at 314. The fact that plaintiff's activities at home (such as playing video or computer games) evince at least "some amount of concentration, persistence, and pace," as the ALJ found, also does not necessarily equate to an ability to perform full-time, competitive work. AR at 31.

Finally, the ALJ asserted that "Dr. Moore himself noted that the claimant's allegations were inconsistent with the treatment records that he reviewed." AR at 31 (citing AR at 308). As a result, the ALJ concluded that Dr. Moore "relied on the claimant's self-reports and his

---

[8] Plaintiff explained this to the ALJ during the hearing when he stated that "I [was] physical (sic) able to work. The ability to work and be reliable is a little different. So I would state to the state, that thinking I could work and I realized that, you know, it just was too, not be able to work, took some self-actualization, self-realization . . . I think I can do more than I can is I guess the short answer." AR at 62-63.

REPORT AND RECOMMENDATION - 14

allegations regarding physical impairments when formulating his opinion." AR at 31. As noted above, Dr. Moore reviewed plaintiff's treatment records, including his counseling records, and based his opinion in part upon this review, as well as his clinical interview and the substantial psychological testing he performed. AR at 308. Dr. Moore devoted a page of his report to a summary of his review of records. AR at 308. It is not at all clear, based upon this Court's review of the ALJ's decision and Dr. Moore's report, what inconsistency in plaintiff's reporting of symptoms the ALJ believes that Dr. Moore identified, or how that would justify the ALJ's rejection of Dr. Moore's opinion as being improperly based upon plaintiff's less than reliable self-reports. AR at 308.[9] Although the ALJ may have disagreed with Dr. Moore's diagnosis of fibromyalgia, Dr. Moore was conducting a psychological evaluation and not a physical examination, and there is no evidence that he improperly relied upon unreliable self-reports in diagnosing PTSD. There is nothing in the record to suggest that Dr. Moore relied on plaintiff's description of his symptoms more heavily than his own clinical observations. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

Accordingly, the ALJ erred at step two by rejecting diagnoses of anxiety order and/or PTSD as severe impairments. The ALJ further erred by rejecting the medical opinion of examining physician Dr. Moore without specific and legitimate reasons, supported by substantial evidence. On remand, the ALJ should reevaluate this evidence in light of the direction provided by this Report and Recommendation.

---

[9] The ALJ may have been referencing Dr. Moore's note that in 2013, plaintiff reported that he "is still online a great deal; there is no mention of his gaming." AR at 308. However, the Court declines to speculate as to the ALJ's meaning.

REPORT AND RECOMMENDATION - 15

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **February 22, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 23, 2018**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 8th day of February, 2018.

*James P. Donohue*

JAMES P. DONOHUE
Chief United States Magistrate Judge